JULIE I. DURKEE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Durkee v. Commissioner
Docket No. 5033-78
United States Tax Court
T.C. Memo 1981-475; 1981 Tax Ct. Memo LEXIS 271; 42 T.C.M. (CCH) 936; T.C.M. (RIA) 81475; August 31, 1981. Julie I. Durkee, pro se. Jack Forsburg, for the respondent. HALL MEMORANDUM FINDINGS OF FACT AND OPINION HALL, Judge: Respondent determined a $ 7,802.56 deficiency in petitioner's 1973 income tax. [1] The sole issue is whether petitioner is an "innocent spouse" under section 6013(e) [2] for the year 1973. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Julie I. Durkee *272 ("petitioner") resided in Jackson County, Iowa, when she filed her petition. During all pertinent times petitioner was married to Sidney L. Durkee ("Sidney"). During 1973 petitioner worked as a babysitter [3] and Sidney worked for the Chicago and Northwestern Railroad. During 1973, Sidney also participated in a scheme to defraud Fronings, Inc. ("Fronings"), a grain broker located in Clinton, Iowa. Although it customarily purchased grain from other elevators, Fronings did accept grain delivered directly to it by individuals. An individual delivering grain directly to Fronings received payment through a second elevator which acted as a broker for the sale. An individual delivering grain directly to Fronings received a "scale ticket" which indicated the type, quantity, grade and price of the grain delivered and acted as a receipt. The individual seller gave the scale ticket to one of the elevators which brokered sales *273 to Fronings, which in turn presented it to Fronings. Fronings paid the brokering elevator for the grain and it in turn issued the individual seller a check for the proceeds less a fee for brokering the transaction. Among the elevators which brokered sales to Fronings during 1973 and 1974 were C & J Service Company ("C & J"), Krambeck Feed and Supply Company ("Krambeck") and Feeders Supply, Inc. ("Feeders"). Sidney was a participant in a scheme to defraud Fronings through the use of false scale tickets. Employees of Fronings made out Fronings' scale tickets indicating that Sidney had delivered grain to Fronings when in fact no grain had been delivered. Sidney had to make payments to the Fronings employees who prepared the false scale tickets for each scale ticket they prepared. Sidney turned the false scale tickets over to C & J, Krambeck and Feeders knowing that the elevators would receive payment for the fictitious grain upon presentation of the false scale tickets to Fronings and would in turn pay Sidney the proceeds less a brokering fee. In 1973 Sidney presented nineteen Fronings scale tickets to C & J and Krambeck for brokering. That same year Sidney received from C & *274 J and Krambeck checks totaling $ 40,321.50 [4] as payment for the tickets. Three of these nineteen scale tickets reflected legitimate transactions in which Sidney salvaged grain from wrecked or derailed boxcars and sold it to Fronings. [5] The remaining tickets represented fraudulent transactions. In 1974 Sidney received twenty-two checks totaling $ 55,067.22 from C & J, Krambeck and Feeders in payment for scale tickets. [6] All of these payments were in exchange for tickets reflecting fraudulent transactions. On October 31, 1974, Sidney was arrested for his role in the scheme to defraud Fronings. On April 1, 1976, Sidney pled guilty to one count *275 of false pretenses and was sentenced to three years in the Iowa state penitentiary. Sidney began serving his sentence on April 27, 1976, and was released on May 13, 1977. Petitioner first became aware of her husband's involvement in the scheme to defraud Fronings when he was arrested. Petitioner knew that Sidney had additional money in 1973, but whenever she questioned him about it he told her that he earned it salvaging grain. During 1973 and 1974 petitioner and her husband were having marriage difficulties and petitioner decided not to press Sidney for an explanation of the grain salvaging to avoid further straining their relationship. During 1973 Sidney purchased a couch and television for petitioner. In 1973 Sidney had a girlfriend and spent large sums of money on entertainment which neither included nor benefited petitioner. Sidney also ordered a new pickup truck in 1973 that was delivered in 1974. On August 19, 1974, petitioner and Sidney entered into a purchase agreement to buy a 167 acre farm in Jackson County, Iowa, for $ 83,500. Petitioner and Sidney made a $ 16,000 down payment on the farm, at least $ 6,200 of which was attributable to income earned by Sidney *276 in 1973 and omitted from the 1973 joint return. [7]
On April 21, 1975, petitioner signed a real estate contract for the purchase of the Jackson County farm, a copy of which was filed with the Jackson County Recorder on May 1, 1975. Sidney neither signed nor was a party to the contract. Petitioner believed that this would protect the farm from any possible civil liability Sidney might have to Fronings. All subsequent payments on the purchase price of the farm have been made. Sidney never repaid Fronings any of the amounts of which it was defrauded. On their 1973 joint return petitioner and Sidney reported taxable income of $ 6,522.93, the entire amoumt of which is attributable solely to Sidney's wages from Chicago and Northwestern Transportation *277 Company. Petitioner and Sidney omitted from their return all income earned by petitioner as a babysitter, interest income earned from the savings account at Camanche State Bank, all income earned by Sidney from the legitimate grain salvaging transactions and all income earned illegally by Sidney from the scheme to defraud Fronings. In his notice of deficiency respondent increased petitioner's and Sidney's joint income by $ 40,321.40 (attributable to both the legitimate and fraudulent transactions between Sidney and Fronings). Respondent allowed deductions for the amounts paid by Sidney to Fronings' employees for the false scale tickets. OPINION The sole issue is whether petitioner was an "innocent spouse" and therefore not liable for the 1973 deficiency. Section 6013(e) provides: (e) SPOUSE RELIEVED OF LIABILITY IN CERTAIN CASES.-- (1) IN GENERAL.--Under regulations prescribed by the Secretary or his delegate, if-- (A) a joint return has been made under this section for a taxable year and on such return there was omitted from gross income an amount properly includable therein which is attributable to one spouse and which is in excess of 25 percent of the amount of gross *278 income stated in the return, (B) the other spouse establishes that in signing the return he or she did not know of, and had no reason to know of, such omission, and (C) taking into account whether or not the other spouse significantly benefited directly or indirectly from the items omitted from gross income and taking into account all other facts and circumstances, it is inequitable to hold the other spouse liable for the deficiency in tax for such taxable year attributable to such omission, then the other spouse shall be relieved of liability for tax (including interest, penalties, and other amounts) for such taxable year to the extent that such liability is attributable to such omission from gross income. Petitioner and her husband filed a joint return in 1973 and omitted therefrom amounts properly includable therein which are attributable to Sidney and which are in excess of 25 percent of the gross income stated in the return. The relevant inquiries, therefore, are (1) whether petitioner has established that in signing the returns she did not know of, and had no reason to know of, the omissions, and (2) whether, taking into consideration all facts and circumstances, it *279 is inequitable to hold her liable for the tax attributable to the omissions. The burden of proof on this matter rests on petitioner. . The first query is whether petitioner knew of the omitted income. Apparently, petitioner confuses knowing of the omitted income with knowing that it was illegally obtained. Petitioner knew of the omitted income because she knew (or thought) her husband was earning money in legitimate grain salvaging operations. We find that although petitioner did not know the illegal nature of most of the income earned by Sidney during 1973 and omitted from their joint return, petitioner, based on her own testimony, was aware that her husband had unreported income in 1973. The fact that petitioner did not know the illegal nature of the income is irrelevant. While petitioner was innocent of any complicity in the scheme to defraud Fronings, she was not an innocent spouse within the meaning of section 6013(e). Moreover, even if petitioner did not know of the omitted income, it would not be inequitable to hold her liable for the deficiency attributable to such omission. Sec. 6013(e)(1)(C). Sidney *280 withdrew $ 7,000 from his savings account at Camanche State Bank and used this as part of the down payment on the purchase price of the Jackson County farm. Title to the Jackson County farm was placed solely in petitioner's name to protect the farm from claims made by Fronings. Assuming the best possible view for petitioner, at least $ 6,200 of the $ 7,000 is attributable to deposits made in 1973. Petitioner does not assert that the 1973 deposits are attributable to income reported on the 1973 joint return. Rather, Sidney testified that the entire amount of the $ 16,000 down payment used to purchase the farm is attributable to the original seed money he used in establishing the scheme to defraud Fronings. Sidney further testified that in 1972 he earned money fencing stolen tires, that he then used that money in 1973 to set up the scheme to defraud Fronings, and that he later placed the seed money in savings accounts, including the account at Camanche State Bank. We are not convinced that Sidney earned $ 16,000 in 1972 fencing stolen tires. We find that a direct tracing of funds from income illegally earned in 1972 to the savings account at Camanche State Bank cannot be made. *281 But, we find that the 1973 deposits in that account are attributable to income earned in 1973 and omitted from petitioner's and Sidney's joint return. Petitioner significantly and directly benefited from these sums since at least a portion thereof was used as part of the down payment on the farm. Accordingly, petitioner also fails to qualify as an innocent spouse because she had not met the requirements of section 6013(e)(1)(C). Decision will be entered for the respondent. Footnotes
1. Respondent's deficiency notice was addressed to petitioner and her husband, Sidney L. Durkee. Respondent also asserts a $ 3,901.28 addition to tax under section 6653(b) for fraud against petitioner's husband only. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.↩
3. Petitioner testified that she worked as both a babysitter and a mail carrier during 1973. On cross examination, however, it became clear that petitioner did not recall exactly when she began working as a mail carrier and apparently it was not until 1974.↩
4. Sidney did not enjoy the full benefit of the amounts fraudulently received because he had already paid the Fronings' employees to prepare the false scale tickets. One check was made payable to Doug Heppner but was endorsed by both Sidney and Heppner. This check represented one-half of the amount received in one of the legitimate grain salvaging operations. See note 5, infra↩. 5. At most, the three legitimate transactions only accounted for $ 5,305.99 of the $ 40,321.50 received in 1973.↩
6. See note 4, supra↩.
7. On January 1, 1973, Sidney maintained a savings account at the Camanche State Bank in Camanche, Iowa. This account had a beginning balance on January 1, 1973, of $ 24.78. Sidney made two deposits totaling $ 7,200 to this account during 1973, and one of $ 700 in 1974. On August 19, 1974, he withdrew $ 7,000 from this account in the form of a cashier's check which was used as part of the $ 16,000 down payment on the farm.↩